## CITY OF WICHITA FALLS v. BOWEN.
### No. 14548.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 12, 1943.

Rehearing Denied Dec. 10, 1943.

T. A. Hicks and Thelbert Martin, both of Wichita Falls, for appellant.

T. R. Boone, of Wichita Falls, and Alfred Crager, of Fort Worth, for appellee.

BROWN, Justice.

In the year 1941, the Railroad Commission of Texas issued to Dr. M. T. Ramsey a certificate of convenience and necessity permitting said Ramsey to operate a motor bus company, transporting "passengers for hire between the City of Wichita Falls, Texas, and Kell Field, located approximately four miles north of Wichita Falls city limits, using U. S. Highway 277 from the city limits of Wichita Falls to Kell Field, serving both the Army Technical Air School, located approximately one mile south of Kell Field on said highway, and Kell Field; an alternate return route over an unpaved country road intersecting U. S. Highway 277 at the southern boundary of Kell Field and then eastward approximately one mile to a paved road, thence southward to the city of Wichita Falls; serving all intermediate points."

With the express consent and order of said Commission, the said certificate was sold to Twin Field Transportation Company, Inc., which last named concern is operated by R. C. Bowen, as Trustee, and on April 7, 1942, said Commission issued a certificate of convenience and necessity "to R. C. Bowen, Trustee, doing business as Twin Field Transportation Company", the same being in words, figures and substance like the certificate granted to M. T. Ramsey.

On October 3, 1942, the United States, acting by and through the Secretary of War, issued a license to said Bowen, Trustee, doing business as Twin Field Transportation Company, authorizing the licensee, for a period of not exceeding five years, to operate and maintain a motor transportation service on the Sheppard Field Military Reservation. (Sheppard Field is the same as the Army Technical Air School mentioned in the certificates.)

On November 21, 1942, said Railroad Commission issued a certificate of convenience and necessity to said Bowen, Trustee, doing business as Twin Field Transportation Company, permitting said company to operate its bus line "between Sheppard Field, Texas, over U. S. Highways 70 and 277 north from Sheppard Field to Burkburnett, returning over the same route."

Burkburnett, Texas, is a town in the north end of Wichita County, near the Red River that divides the States of Texas and Oklahoma.

As a matter of course, the Railroad Commission, in granting the certificates of convenience and necessity, referred to herein, fixes the fares to be charged.

On the 1st day of February, 1941, the City of Wichita Falls, Texas, leased to the United States "a tract of land, and buildings, improvements and appurtenances thereunto belonging, situated in Wichita County, State of Texas, containing approximately 604 acres, more or less, said land being a plot of ground adjacent to Kell Field Airport", and same is described by metes and bounds.

The lessee is given the right to renew this lease from year to year, but not for a period of time beyond June 30, 1966.

On the 1st day of June, 1942, the City of Wichita Falls undertook by an ordinance to annex and include within the said City's corporate limits 662 acres of land, including all of the lands leased to the U. S. Government, as aforesaid, and the ordinance specifies: "That there exists an urgent public need for the preservation of peace, health and safety of property, by reason of the fact that the City owned Municipal Airport, known as Kell Field Airport, and consisting of several hundred acres of land, and being situated several miles from outside the corporate limits of City, and in view of these facts that there exists an emergency", etc.

It is undisputed that for the purpose of annexing this land as a part of the City limits of the City of Wichita Falls, the metes and bounds description discloses that the land included begins at the then corporate limits of said City, where U. S. Highway No. 70 leaves said City limits, and runs along the east right-of-way line of said Highway No. 70, and then proceeds to take in the lands described, which are adjacent to such highway, and after running around said lands, the survey line comes back to the west right-of-way line of said Highway 70 and comes on back to the said city limits, where the survey began.

In other words, in order to bring this property within the city limits of Wichita Falls, there is included in the survey and ordinance of annexation the entire length of U. S. Highway No. 70 from the city limits of Wichita Falls up to the point where said U. S. Highway begins to border upon the land that is to be taken into the city limits, and extending and taking in all of said U. S. Highway that does border upon the lands to be annexed.

It is undisputed that the ordinance of annexation makes no attempt to take in any

land lying on either side of U. S. Highway No. 70 from the said City's limits until said Highway reaches the land to be annexed, and that no land on the opposite side of U. S. Highway No. 70, from Kell Field Municipal Airport, is attempted to be annexed.

Thus it is seen that the lands attempted to be annexed are simply joined to the city limits by a "stem" and such stem is U. S. Highway No. 70.

On the theory that the annexation ordinance, just referred to, gives the City of Wichita Falls full control and supervision of all that portion of U. S. Highway No. 70 included in the ordinance of annexation, as well as control over the lands not included in the said Highway, said City, on September 8, 1942, passed ordinance No. 1349, which has for its purpose the levying of a rental charge of two per cent of the gross income received by all persons who transport passengers for hire "on and over designated routes within said City and who use the streets, alleys and public ways of said city for such purpose, prescribing penalties and declaring an emergency."

Section II of this ordinance states: "The fact that Kell Field has been recently annexed to and has become a part of the City of Wichita Falls, Texas, and that the street and highway connecting Kell Field and Sheppard Field with the City of Wichita Falls is now within the corporate limits of said City and the Wichita Transit Corporation is now operating under a franchise and carrying passengers to Sheppard Field and to Kell Field at rates prescribed by its franchise and is paying in accordance with the terms and provisions of its franchise two per cent of its gross income from its business as street rentals to the City of Wichita Falls, Texas, and the further fact that R. C. Bowen, as Trustee for the Estates of A. C. Bowen and Doris Bowen Frost, using the trade name of The Twin Field Transportation Company, is also carrying passengers within the City of Wichita Falls to Kell Field and Sheppard Field in competition with Wichita Transit Corporation without a franchise from the City of Wichita Falls and without any obligation to pay the street rental which the said Wichita Transit Corporation is now paying to the City of Wichita Falls creates an emergency and requires the suspension of the rules requiring the reading of ordinances on three several days, and said rule is hereby suspended, and this ordinance shall take effect from and after its passage and approval."

On the same day said City passed ordinance No. 1350, which has for its purpose fixing fares to be charged for transporting passengers for hire within the said city, by persons "over designated routes within said City and its suburbs and to use the streets, alleys and public ways of the City for such purpose", and prescribing penalties.

The fares fixed by this ordinance are lower than those fixed by the Railroad Commission as applied to the rights of Bowen, Trustee, under the certificate of convenience and necessity given Bowen by the said Commission.

On the 7th day of December, 1942, the said City purported to extend the city limits "by annexing the lands belonging to the said City of Wichita Falls, Texas, now being used as Sheppard Field," etc., through the medium of ordinance No. 1355.

This ordinance is bottomed on the theory that the prior annexation ordinance, referred to at length supra, has extended the city limits to a point where it can be said that the lands proposed to be taken into said city limits "are located adjacent to the present city limits of the said City".

To make the word picture plain: The city first attempts to annex a portion of U. S. Highway No. 70 extending from the city limits on out such highway until Kell Field is reached, and then having declared that its limits are thus rightfully extended to a body of land near, or, as it is described in the ordinance, "adjacent to the present city limits", it proceeds by another ordinance to take in the other body of land.

This ordinance specifically states that a part of the said lands is now being used by the United States Government under lease contract with the City of Wichita Falls, in the operation of an Air Service Mechanics School known as Sheppard Field, "and the land lying south and east thereof known as the McKinley tract of land is now owned by the City of Wichita Falls"; and said ordinance further states: "Whereas, there are no residents of any such territory qualified to vote for members of the Legislature of the State of Texas; and all of said territory, land and property is free and exempt from all kinds of taxation, and that same cannot be taxed, and there is no necessity for a petition or hearing thereon, in order to annex said territory"; and: "The fact that the authority

of the city to pass rules, regulations and ordinances applying to the above territory owned by the City of Wichita Falls, Texas, and the fact that there is an urgent public need for the preservation of the peace and health and safety and of property by reason thereof, creates an emergency", etc.

On the trial of the instant suit, the City of Wichita Falls introduced in evidence its ordinance No. 219, passed in the year 1915, requiring the operator of a motor bus to take out a license, regulating the operation of buses and providing for license fees, etc., and prescribing penalties.

It is obvious from the record before us that the ordinances passed to effect the taking of Kell Field and Sheppard Field into the city limits of Wichita Falls were passed solely for the purpose of obtaining control, by the city of Wichita Falls, of U. S. Highway No. 70 from where it leaves the actual city limits on and until it runs the entire length of the boundaries of Kell Field and Sheppard Field, and control of all motor vehicles operated for hire that use said highway from the city limits of Wichita Falls to and into and through the two Fields named.

In fact, an inspection of the ordinances that were passed on the theory that the annexation ordinances are binding on all persons will disclose that these annexation ordinances, tax ordinances and motor bus regulation ordinances were all directed at Twin Field Transportation Company and constitute an attempt to bring the operation of the motor bus business of said company under the complete control of the City of Wichita Falls and to divest the Railroad Commission of the State of Texas of all of its authority in the premises, thereby nullifying and setting at naught the prior orders, findings and judgments of the Railroad Commission.

Bowen, as Trustee, brought suit alleging, in substance, the above enumerated facts and the rights acquired thereunder, and alleged the acts of the said City in attempting to annex the said lands and territory and a portion of U. S. Highway No. 70, as aforesaid, and alleged the passing of the tax and rate fixing and motor bus control ordinances.

The petition attacks the ordinances as follows: "Plaintiff alleges that said ordinances above described, in all their parts, paragraphs and sections, are void; that they constitute an unconstitutional attempt on the part of the City of Wichita Falls to usurp authority and control over the plaintiff's motor bus line and are an adoption of ordinances in conflict with the Constitution of the State of Texas and the general law of the State of Texas; that said ordinances are an arbitrary attempt to usurp and wrest from the Railroad Commission of Texas the authority, control and power of the Railroad Commission of Texas over plaintiff's motor bus line and service, heretofore exercised, granted and vested in the Railroad Commission by the General Law of Texas; that such ordinances are an attempt on the part of the City of Wichita Falls by its ex parte action, to oust the governmental and legislative agency of the Railroad Commission from its control of motor carrier operations upon said U. S. Highway No. 70; that said ordinances are void because they constitute an attempt on the part of the City of Wichita Falls to cancel the rights, privileges and franchise of plaintiff granted to plaintiff by virtue of general law, viz.; the Certificates of Convenience and Necessity issued by the Railroad Commission of Texas and the rights accruing thereto and thereunder; and such attempt constitutes the taking of property without due process of law within the inhibition and terms of both the Constitution of the State of Texas and the Constitution of the United States of America. That said ordinances are arbitrary and unreasonable attempts on the part of the City of Wichita Falls to extend its licensing and taxing power beyond the power delegated to it, and the attempt to fix and stipulate the rate structure of plaintiff's operation as set forth in said ordinances is an arbitrary, unwarranted and unreasonable attempt on the part of the City of Wichita Falls to set rate structures of a utility of the type of plaintiff without any warrant in law therefor, and any fact finding basis therefor, and without hearings, and contrary to the rate structures adopted and established by the Railroad Commission of Texas."

There is then made this further allegation: "Plaintiff alleges that the operation performed by him is still an intercity operation despite the attempt of the City of Wichita Falls to extend its limits so as to include all of U. S. Highway No. 70 from the former city limits to Kell Field because plaintiff's motor bus line and service passes out of the City of Wichita Falls and into the Government Reservation known as Sheppard Field and performs a transporta-

tion service between the said Sheppard Field and the said City of Wichita Falls and in and upon the said Government Reservation, and between said City of Wichita Falls and Burkburnett, Texas, by way of said Sheppard Field."

Alleging that said City is undertaking and threatening to enforce the ordinances and to assess penalties and fines and make arrests of plaintiff and his employees, etc., he prayed that the ordinances be declared void as against his rights under the certificates of convenience and necessity awarded to him, and that the City be enjoined from attempting to enforce the ordinances as against plaintiff.

The defendant answered specially pleading all of the ordinances mentioned above and asserting that they are valid and enforceable against plaintiff and prayed that plaintiff not only take nothing, but in a cross-action the city sought an injunction against plaintiff to restrain the operation of plaintiff's buses until plaintiff acquires a franchise from the City and complies with the ordinances.

Tried to the court, judgment was rendered for the plaintiff and that defendant City take nothing on its cross-action.

The City, in appealing, presents some six points attacking the trial court's judgment.

█ The first point simply contends that when the Railroad Commission undertook to award the certificate of convenience and necessity under which appellee asserts rights, such Commission was wholly without authority to grant same and its act in so doing is void and of no effect, in that appellee's bus business was being operated within the city limits of Wichita Falls and its suburbs, and Article 911a (Vernon's Ann.Civil Statutes) conferred no authority upon the Commission to grant the certificate. In granting the certificate, the Railroad Commission had a hearing and found, among other findings, that the United States Government was at that time engaged in the construction and erection of a military reservation to be known as Sheppard and Kell Field, located about 3½ or 4 miles north of the city limits of the City of Wichita Falls, and that "neither of said fields are within the city limits or the suburbs of Wichita Falls"; also that the "Commission many years ago took over and preempted the field of regulating bus operations over the routes here involved and has since then continuously exercised jurisdiction over said routes and over such operations", and that "this Commission has exclusive jurisdiction under all of the facts and circumstances over the operations involved in the instant case and has had such exclusive jurisdiction for many years".

These findings are a part of the order of the Commission which gave birth to the certificate of convenience and necessity on which appellee relies.

Assuredly, the attack made by appellant city is one that is distinctly collateral and this may not be successfully done here.

Our Supreme Court in Producers' Ref. Co. v. Missouri, K. & T. R. Co., 13 S.W. 2d 679, declared that the orders of the Railroad Commission are akin to the judgments of our courts; it being a quasi judicial body, and whether it is to be treated as a tribunal of general or limited jurisdiction, the sanctity of its orders is the same; they cannot be collaterally attacked, and can only be set aside or vacated by some direct attack, such as by appeal or proceeding to vacate.

Point two contends that, since at the time the injunction writ was issued, appellee was operating his bus business to Sheppard Field wholly within the corporate limits of the City of Wichita Falls, and the city limits had been extended so as to include both Sheppard Field and Kell Field before the judgment was rendered, the appellant city had the exclusive right to regulate the business of the appellee and to enforce its ordinances that are questioned in this suit.

This is the crux of the case and, if the point is well taken, disposes of the controversy.

█ We are of opinion that the pleadings of the plaintiff are sufficient to raise the issue of the validity of the several city ordinances under which the City of Wichita Falls undertakes to assume and take over absolute control of the plaintiff and his bus operations, to the exclusion of all rights and powers of the Railroad Commission of the State of Texas.

If the City of Wichita Falls may run a survey down U. S. Highway No. 70, taking in only the lands occupied and provided for highway purposes, until it reaches some lands adjacent to the highway that it desires to annex, and which lands have never been adjacent to the city limits of said City, then it follows that the said City may begin at its proper city limits and run down the highway that connects the town of

Iowa Park and Wichita Falls, take in the town of Iowa Park, and run back down the said public highway, and thus effect the annexation of Iowa Park as a part of the City of Wichita Falls.

If able to do that, the further step may be made of proceeding at the city limits of Iowa Park, on the same highway, and then running down said highway and on to the City of Electra, and around such City and back to where the highway enters its limits from the Wichita Falls side, and on down the highway lines back to the City limits of Iowa Park, and thereby annex the City of Electra.

Enabled to do these unheard of things, there is practically no limit to which a city may not extend its limits by the annexation of distant territory. The matter becomes reductio ad absurdum.

■ We believe that the City of Wichita Falls is without authority or power to do the things that were done to obtain absolute control over U. S. Highway No. 70, and to use such highway as a stem with which to connect the City of Wichita Falls with lands not adjacent to the city, and effect the annexation of such distant lands, and by such acts oust the jurisdiction of the Railroad Commission.

Great stress is laid upon the fact that the City of Wichita Falls is and was at all times pertinent to the issues involved in this suit a Home Rule City, and operating under a charter that finds its validity in the municipal autonomy that is by the State granted to such cities.

The city charter enumerates many corporate powers and then provides that it shall exercise, in addition to those enumerated, "all powers that now are, or hereafter may be, granted to municipalities by the constitution or laws of Texas"; and that it shall "have and exercise all of the powers, rights, privileges and immunities of every character and description whatsoever conferred upon and granted to cities of more than five thousand inhabitants to adopt and amend their charters by Chapter 147, page 307, of the General Laws of Texas, passed by the Thirty-third Legislature, of said State, in 1913. [Vernon's Ann.Civ.St. art. 1165 et seq.], and approved April 7, 1913, as well as any and all amendments thereof heretofore or which may be hereafter adopted thereto."

The provisions of the city charter relating to the "annexation of territory" are as follows:

"Section 3. The corporate limits of the City as herein established may be enlarged and extended whenever an ordinance passed by the Board of Aldermen, specifically defining the limits of the entire city as proposed by such ordinance, shall have been submitted to the electors residing within the proposed limits and approved by a majority of those voting thereon. Any such ordinance shall specify the time when it is to be submitted to the electors, which may be at either a general or special election held not less than thirty days nor more than six months after the passage of the ordinance. If there be electors residing within the territory which the proposed limits would add to the City, the ordinance shall indicate a place or places at which they may cast their votes for or against such ordinance. The ballots for voting on any such ordinance shall be separate from all other ballots and shall have printed thereon the following propositions, one above the other, in the order named: 'For the ordinance extending the City limits,' and 'Against the ordinance extending the City limits.' The ballots cast on any such ordinance shall be returned and counted and the results of the election canvassed and declared in the manner provided for elections for members of the Board of Aldermen. Upon the approval of any such ordinance by the voters as provided in this Section, the City Clerk shall record that fact, together with the limits set forth in the ordinance, in the same manner as provided by law for recording charter amendments adopted by the voters, and thereafter the limits so set forth shall be the legal limits of the City of Wichita Falls.

"Section 4. Territory may also be annexed to the City by ordinance, passed by the Board of Aldermen upon petition in writing signed by a majority of the residents of any such territory qualified to vote for members of the Legislature of the State of Texas. Any such petition shall describe by metes and bounds the territory which it is desired to have annexed and shall be accompanied by a map indicating the general location and boundaries of such territory. Upon receipt of any such petition the Board of Aldermen shall provide for a public hearing thereon at its next meeting held thereafter. At any time within sixty days after the public hearing, an ordinance may be introduced providing for the annexation of the territory described in such petition, and, upon passage of such ordinance, the territory described in the pe-

tition shall thereafter be a part of the territory of the City of Wichita Falls."

Turning to the Home Rule Statutes enacted after the Home Rule Amendment to the State Constitution was adopted—the statutes that are referred to in the said city charter—we find Article 1175 covering "the enumerated powers" of such Home Rule cities, and subsection, or paragraph, 2 thereof provides: "The power to fix the boundary limits of said city, to provide for the extension of said boundary limits and the annexation of additional territory lying adjacent to said city, according to such rules as may be provided by said charter."

■ We are not unaware of the general rule that, where a city, in attempting to exercise its powers of annexation, takes in certain territory, acting under authority conferred by law or its charter, the validity of the annexation cannot be collaterally attacked in a suit by an individual, and that it may be questioned only by a direct suit in the nature of a quo warranto, or in a proceeding to which the State is a party; but we are also aware of the rule that "where the act of extension or annexation is absolutely void because wholly beyond the powers of the municipality—that is, an act not authorized by any law or color of law—it is subject to collateral attack by anyone, whenever and wherever its validity is called in question." 30 Tex.Juri. para. 35, pp. 77, 78.

To our way of thinking, it takes a wide stretch of the imagination to visualize the territory, sought to be annexed by the City of Wichita Falls, as "territory lying adjacent to said City".

■ The rights of the City of Wichita Falls are to be measured by the Home Rule Amendment to the State Constitution—Article XI, section 5, Vernon's Ann.St., and the charter powers of such cities are made "subject to such limitations as may be prescribed by the Legislature".

We find nothing in the enabling statutes, passed by the State Legislature, that, by a fair construction of the language used, gives the City of Wichita Falls the right to annex the two bodies of land under consideration here, neither of which lies "adjacent to said city".

Applying the "good old rule" of common sense to the language of the statute, it cannot reasonably be said that the territory involved is "adjacent to said city", in the sense in which the law making bodies of Texas must have necessarily intended it.

■ We hold that the plaintiff in the instant suit can attack and has attacked the ordinances attempting to annex the two described bodies of land, as well as the ordinances that were passed by said city on the theory, and only on the theory, that the attempted annexations were legal.

An illustration of the effort of the said city to show some necessity for and right to annex the territory covered by "Kell Field Airport", this annexation ordinance declares that "there exists an urgent public need for the preservation of peace, health and safety of property" * * * on the lands "known as Kell Field Airport * * * situated several miles from outside the corporate limits of the city", which facts create an emergency requiring the quick passing of the ordinance of annexation.

No one will successfully argue that there is any urgent public need for the City of Wichita Falls to preserve the peace on this territory that is under the exclusive control of the United States Government and used as a base for the training of its men in uniform. It goes without saying that the Government of the United States is not only providing for the preservation of peace in such area, but that it has exclusive control over all such matters.

It is equally sound that there was no urgent public need for the said city to preserve the health within said territory, or to preserve the safety of property therein.

The health of those residing within this territory is a matter solely for the attention and control of the Government of the United States, and the preservation of the safety of the property therein concerns only the said Government.

The criticism just made by us of the ordinance that attempts to annex "Kell Field" is not only applicable to the later ordinance that attempts to annex "Sheppard Field", but the last mentioned ordinance is, in our opinion, weaker in its reasons for annexing the affected territory. This ordinance declares that there are no residents in the territory who are qualified to vote and that all of the lands involved are not only free from taxation, but that they cannot be taxed, and the ordinance asserts "that there is an urgent public need for the preservation of the peace and health and safety of property" in such territory, which creates

the emergency calling for the immediate enactment of the ordinance.

It is obvious to us that these ordinances can serve, and were intended to serve, no useful purpose to the City of Wichita Falls other than to make several miles of a public highway one of the public streets of said City, over and through which the City may take absolute control and with which portion of the public highway it may join the City to two bodies of land that lie several miles from the actual city limits of said City, and thereby assume control over appellee's bus operations and secure for such City whatever taxes and charges it may levy against appellee.

We do not believe the City of Wichita Falls has any such right, power or authority.

All assignments of error are overruled and the judgment of the trial court is affirmed.