Affirmed and Memorandum Opinion filed September 28, 2006








Affirmed and Memorandum Opinion filed September 28, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00441-CR

_______________

 

RAQUEL SADE GREEN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                   
            

On Appeal from the 248th District Court

Harris County, Texas

Trial Court Cause No. 1000029

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

A jury
found appellant, Raquel Sade Green, guilty of injury to a child.  Appellant was
sentenced to seven years= incarceration.  In five issues, appellant contends the trial
court erred in submitting a jury charge that permitted a non-unanimous verdict,
and the evidence is legally and factually insufficient to support the
conviction and the affirmative finding of use of a deadly weapon.  Because all
dispositive issues are clearly settled in law, we issue this memorandum opinion
and affirm.

 








I.  Background

At
approximately 2:00 a.m. on September 6, 2004, appellant gave birth to a baby
boy in her home.  Later that day, appellant was admitted to the hospital for
vaginal bleeding.  Appellant told the examining physicians she had experienced
a miscarriage and flushed the product of the miscarriage down the toilet. 
Physiological evidence suggested to the doctors that appellant had not
experienced a miscarriage, but had undergone a full-term delivery.  Despite
repeated questioning from one of the physicians about where the baby might be
located, appellant responded that she miscarried and flushed the fetus down the
toilet.  At approximately 10:00 p.m. that night, after a telephone conversation
with appellant, appellant=s mother discovered the deceased baby, wrapped in towels in
the trunk of appellant=s car.  

Doctors
Iouri Boiko and Morna Gonsoulin of the Harris County Medical Examiner=s Office conducted an autopsy on the
baby=s body and determined the baby was
born alive and breathed at least one time before he died.  The cause of death
was determined to be due to complications of Aprenatal neglect@ or Apara neonatal neglect@ with suffocation and environmental
exposure.  The medical examiners did not discover any disease or congenital
defect that contributed to the baby=s death.

At the
conclusion of the guilt-innocence phase, the jury was charged with determining
whether appellant intentionally, recklessly, or with criminal negligence,
caused serious bodily injury to the baby by not seeking or providing
appropriate medical care or assistance, by placing and leaving the baby inside
the trunk of a motor vehicle, by suffocating the baby with her hand, or by
suffocating the baby with an unknown object, or by a manner and means unknown. 
The jury found appellant guilty of Arecklessly causing serious bodily
injury to a child younger than fourteen years of age.@

 








II.  Jury Charge

In her
first issue, appellant contends the trial court permitted a less than unanimous
verdict because the jury charge did not instruct the jurors that they must
unanimously agree on the theory by which appellant caused serious bodily injury
to her child.  In analyzing a jury charge issue, our first duty is to decide
whether error exists.  Middleton v. State, 125 S.W.3d 450, 453 (Tex.
Crim. App. 2003).  If we find error, we then analyze the error for harm.  Id.
The degree of harm necessary for reversal depends on whether the defendant
preserved error by objection.  Id.  Reversal is required for jury charge
error when the defendant has properly objected to the charge and we find Asome harm@ to the defendant=s rights.  Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  When the defendant fails to object
or states that she has no objection to the charge, we will not reverse for jury‑charge
error unless the record shows Aegregious harm@ to the defendant.  Bluitt v.
State, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); Almanza, 686 S.W.2d
at 171.  Thus, we review alleged charge error by considering: (1) whether error
existed in the charge; and (2) whether sufficient harm resulted from the error
to compel reversal.  See Posey v. State, 966 S.W.2d 57, 60 (Tex. Crim.
App. 1998).

A person
commits the offense of injury to a child if she intentionally, knowingly,
recklessly, or with criminal negligence, by act or intentionally, knowingly, or
recklessly by omission, causes serious bodily injury to a child.  Tex. Pen. Code Ann. ' 22.04 (Vernon Supp. 2006).  Appellant
contends the jury charge is defective because it authorized a conviction if the
jury determined appellant harmed the child by act or omission.  Appellant
contends the charge permitted a non-unanimous verdict because some of the
jurors could have found appellant committed injury to a child through an
affirmative act and some of the jurors could have found appellant committed
injury to a child by omission.  








The
Texas Constitution requires jury unanimity in all felony cases, and the Texas
Code of Criminal Procedure requires unanimity in all criminal cases.  Ngo v.
State, 175 S.W.2d 738, 745 (Tex. Crim. App. 2005).  While jury unanimity is
required on the essential elements of the offense, when the statute in question
establishes different modes or means by which the offense may be committed,
unanimity is generally not required on the alternate modes or means of
commission.  Richardson v. United States, 526 U.S. 813, 817B19 (1999); Ngo, 175 S.W.3d at
747.  Therefore, if the Legislature intended to make Aact or omission@ in section 22.04 separate elements
of the offense, the jury charge in this case is erroneous.  On the other hand,
if the Legislature intended that Aact or omission@ constitute the means of committing
the course of conduct element of injury to a child, the jury charge in this
case was proper.  The Court of Criminal Appeals has determined that Aact or omission@ are not separate elements of an
injury to a child offense about which a jury must be unanimous, but merely
alternate means of committing the offense of injury to a child.  Jefferson
v. State, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006).  Therefore, the jury
charge in this case permitting conviction if the jury found appellant acted by
act or omission was not erroneous.  Appellant=s first issue is overruled.

III.  Legal and Factual Sufficiency of the Evidence

In her
second and third issues, appellant contends the evidence is legally and
factually insufficient to support the jury=s finding that she recklessly caused
serious bodily injury to the child.  In reviewing the legal sufficiency of the
evidence to support a conviction, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found every element of the offense beyond a reasonable doubt.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  In reviewing the
factual sufficiency of the evidence, we consider all of the evidence in a
neutral light and will set aside the verdict only if (1) the evidence
supporting the verdict, if taken alone, is too weak to sustain the finding of
guilt beyond a reasonable doubt, or (2) the contrary evidence is so strong that
the State could not have met its burden of proof beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484B85 (Tex. Crim. App. 2004)








It is
undisputed that appellant gave birth to a baby boy at approximately 2:00 a.m.
on  September 6, 2004, and that by 10:00 p.m. that night the baby was dead. 
Appellant contends the evidence is insufficient to prove that she caused the
baby=s death, either by covering his
mouth, placing him in the trunk of the car, or by failing to obtain appropriate
post-natal care.

In
appellant=s first statement to police officers, she stated that when the baby was
born he was not breathing and did not cry.  She wrapped the baby in a towel and
placed him in the trunk of the car at approximately 7:00 a.m.  In her second
statement to police officers, appellant changed her story and said that the baby
cried for about five minutes after he was born.  After the baby stopped crying,
appellant wrapped him in a towel and placed him in the car trunk at
approximately 3:30 a.m.  Appellant then went to work as usual.

Rochelle
Clampton, an acquaintance of appellant, testified that she spoke with appellant
on the telephone the morning the baby was born.  Clampton testified she heard a
newborn crying during their first telephone conversation.  In their
conversation later in the morning, appellant told Clampton that the baby was
alive, she had wrapped him in a sheet, and she put him in the car.  Clampton
further testified that she notified appellant=s mother that appellant had given birth. 
Appellant=s mother testified that Clampton reported that appellant had experienced
a miscarriage.  Appellant=s mother picked up appellant from work and took her to the
hospital informing the attending physicians that appellant had experienced a
miscarriage.








All
three physicians who examined appellant at the hospital found appellant=s physical condition inconsistent
with her story of experiencing a miscarriage.  Each physician determined that
the position of appellant=s uterus was consistent with someone who had recently
delivered a full-term baby.  Dr. Jauo-Chen Huang thought it impossible that
appellant could have flushed the fetus down the toilet and repeatedly asked
what else appellant could have done with the baby.  After talking with
appellant later that evening, appellant=s mother ascertained where appellant
had left the baby and retrieved him from the trunk of the car.  When she found
the baby, he was dead.

The
medical examiners who conducted the autopsy agreed the child=s cause of death was due to complications
of Aprenatal neglect@ or Apara neonatal neglect@ with suffocation and environmental
exposure.  Dr. Boiko testified that the autopsy revealed the baby was born
alive and had breathed at least one time before he died.  There was no evidence
of external injuries or disease or congenital defect that could have caused the
baby=s death.  The autopsy further
revealed the baby had a tan mucous in its stomach, which was consistent with
the mucous that is ordinarily suctioned away from a baby=s mouth at birth.  The medical
examiners were unable to determine whether suffocation had resulted from a hand
being placed over the baby=s mouth, the towels being wrapped too tightly, or the lack of
oxygen in the trunk of the car.

Having
reviewed all of the evidence both in favor of the verdict and in a neutral
light, we find the evidence legally and factually sufficient to support the
conviction.  The evidence shows appellant gave birth to a live baby boy, who
breathed and cried after he was born.  There is evidence that she placed her
hand over his mouth to prevent her mother from hearing his cries.  Further, she
wrapped him in towels and placed him in the trunk of a car on a late summer
day.  By the time the baby was discovered, he was dead.  We find a rational trier
of fact could have found appellant guilty of injury to a child beyond a
reasonable doubt.  We further find the evidence supporting the verdict, if
taken alone, is not too weak to sustain the finding of guilt beyond a
reasonable doubt, and (2) the contrary evidence is not so strong that the State
could not have met its burden beyond a reasonable doubt. Appellant=s second and third issues are
overruled.








IV.  Deadly Weapon Finding

In her
fourth and fifth issues, appellant contends the evidence is legally and
factually insufficient to support the jury=s finding of the use of a deadly
weapon.  In reviewing these issues, we apply the well-known standards recited
above.  See Wesbrook, 29 S.W.3d at 111; Zuniga, 144 S.W.3d at 484B85.  Appellant contends that because
no one witnessed the birth or death of the baby, the jury=s finding of the use of a deadly
weapon is not supported by proof beyond a reasonable doubt.  

A deadly
weapon is anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury.  Tex.
Pen. Code Ann. ' 1.07(a)(17)(B) (Vernon Supp. 2006).  An object qualifies as
a deadly weapon if the actor intends a use of the object in which it would be
capable of causing death or serious bodily injury.  Bailey v. State, 38
S.W.3d 157, 159 (Tex. Crim. App. 2001).  The deadly character of a weapon may
be shown by the character of the wound inflicted.  Mixon v. State, 781
S.W.2d 345, 346B47 (Tex. App.CHouston [14th Dist.] 1989) aff=d, 804 S.W.2d 107 (Tex. Crim. App. 1991).  When a child
is injured while in the care of one person and there are no witnesses as to
what occurred to cause the child=s injury, the primary evidence of the
manner of use of an object causing injury or death is evidence about the
severity, scope, and nature of the child=s injuries.  Gordon v. State,
173 S.W.3d 870, 873 (Tex. App.CFort Worth 2005, no pet.). 








In this
case, the jury was instructed to enter a deadly weapon finding if it found
beyond a reasonable doubt that the appellant used or exhibited a deadly weapon,
Anamely, the trunk of a motor vehicle,
the defendant=s hand, or an unknown object, during the commission of the offense.@  The record reflects that appellant
wrapped the baby in a towel or a sheet and placed him in the trunk of the car
at some time between one to five hours after his birth.  Further evidence
reflects that the baby=s death was caused by suffocation and poor neonatal care with
environmental exposure.  This evidence supports the conclusion that appellant
employed the trunk to cause the baby=s death.  Not only was the baby
exposed to the harsh environment of a motor vehicle trunk in late summer, but
he was concealed, thus greatly reducing the possibility that someone might
discover him and provide appropriate care.  Dr. Boiko of the medical examiners= office testified that under these
circumstances, the trunk could serve as a deadly weapon.

Moreover,
there was sufficient evidence for the jury to determine that appellant used her
hand as a deadly weapon.  To support a deadly weapon finding regarding the use
of hands, the State must show that the accused=s hands in the manner of their use
were capable of causing death or serious bodily injury.  Brooks v. State,
900 S.W.2d 468, 472 (Tex. App.CTexarkana 1995, no pet.).  One of the causes of death listed
was suffocation.  Appellant told the police she held her hand over the baby=s mouth to prevent her mother from
hearing his cries.  Dr. Boiko testified that under these circumstances,
appellant=s hand could have been used as a deadly weapon.  Having reviewed the
evidence in favor of the verdict and in a neutral light, we find legally and
factually sufficient evidence to support the jury=s finding that appellant used a
deadly weapon.  Appellant=s fourth and fifth issues are overruled.

Accordingly,
the judgment of the trial court is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed September 28, 2006.

Panel consists of Justices Hudson,
Fowler, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).