**Flake Woody BROOKS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–94–00154–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted May 10, 1995.

Decided June 2, 1995.

**470**

Howard Law, Dallas, for appellant.

John C. Vance, Crim. Dist. Atty. and Lori L. Ordiway, Dallas County Dist. Attorney's Office, Appellate Section, Dallas, for the State.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

In a jury trial Flake Woody Brooks was convicted of aggravated assault and assessed punishment of ten years' confinement, probated. On appeal he complains of ineffective assistance of counsel, sufficiency of the evidence, and the trial court's exclusion of evidence that a witness was biased because of a financial stake in the trial's outcome. The State in a cross-point contends that the trial court erred in not entering an affirmative finding that Brooks used a deadly weapon in the assault. We reform the judgment to reflect the jury's affirmative deadly weapon finding and remand the case to the trial court for a new trial on punishment.

Richard Karns, the victim, and Gene Byrne were part-time paper carriers for the *Dallas Morning News* in Dallas County. At about 4:00 a.m. February 25, 1992, Karns and Byrne were waiting at an intersection in Dallas for a truck to bring bundled newspapers for them to deliver. Anthony Frazier, another carrier, also was waiting for the papers. Brooks delivered the papers that morning, and he drove a truck under an awning and began throwing bundled papers from the back of the truck. It was raining, and Byrne and Brooks got into an argument about where Brooks was tossing the bundled papers and about where the delivery truck and the carriers' cars were parked. Brooks threw bundles close to Byrne's and Karns' cars, and they cautioned him. Brooks said they all would be further ahead if they kept the papers dry and did not worry about their cars. Byrne then made a disparaging remark about Brooks' wearing a wig.

Byrne testified that he was walking away from Brooks carrying a paper bundle in each hand when Brooks struck him in the back of the head with his fist, sending him reeling forward. Karns tried to intervene, urging Brooks to leave Byrne alone. By the time Byrne turned around, Karns was on the ground on his back. Brooks was on top of Karns, straddling his chest and striking him in the face with both fists. Karns, who is thirty-seven years old, is about 5'8" tall and weighs about 160 pounds. Brooks, who is fifty-five, is about 6'1" tall and weighs more than 200 pounds.

Byrne struck Brooks in the head several times in an attempt to get him off Karns. Frazier joined in, and eventually they separated Brooks and Karns. Byrne testified that Brooks asked them whether they "wanted some more," at which point Byrne told Brooks that if he touched Karns again he

would shoot him. Byrne testified that he carried a .22 caliber pistol in his car for protection when throwing newspapers in certain areas.

Frazier testified that he saw Brooks punch Karns in the face and knock him "cold on the ground." After watching Brooks strike Karns for a few moments, Frazier intervened and tried to help Byrne pull Brooks off Karns. He yelled at Brooks, "You're killing him, you're killing him."

Karns was hospitalized for treatment of his injuries. Medical records admitted into evidence show that Karns had a subarachnoid hemorrhage, abrasions and swelling to the face and forehead, bruising, and a traumatic contusion of the brain. Karns said he almost died and after two years suffered from dizziness and had lost his senses of taste and smell.

Dallas Police Sergeant Clark Allen testified that when he saw Karns in the hospital, Karns had abrasions on his cheeks, black eyes, and a cut lip. Karns "had been beat pretty bad." He said it was more than just a fist fight and that Karns had gotten "the raw end of the deal."

Brooks contended that Karns and Byrne started the fight and that he only defended himself.

In his first point of error, Brooks contends that he was denied the effective assistance of counsel because his trial attorney failed to request proper jury instructions on self-defense.

The court submitted a charge to the jury in which the jurors were asked to consider whether Brooks was justified in using deadly force against Karns.[1] The court did not ask jurors if Brooks was justified in using non-deadly force. The court also charged the jurors on aggravated assault with a deadly weapon and the lesser included offense of assault. The effect of the court's instructions was to instruct the jurors on self-defense as to the aggravated assault charge but not as to the simple assault. Brooks' trial attorney did not object to the charge.

To prove ineffective assistance of counsel, the defendant must show that his counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In determining whether counsel was effective, we look at the trial as a whole, not at isolated incidents. *Moore v. State*, 694 S.W.2d 528, 531 (Tex.Crim.App.1985). The constitutional right to counsel does not mean errorless counsel. It means counsel reasonably likely to render reasonably effective assistance. *Ex parte Cruz*, 739 S.W.2d 53, 57–58 (Tex. Crim.App.1987). Counsel is not rendered ineffective because he may have erred during trial and other counsel might have tried the case differently. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984). In reviewing counsel's representation, we first determine whether the representation was outside the range of professionally competent assistance. We then determine whether a different outcome would have occurred had counsel's representation not been defective. *Jayroe v. State*, 707 S.W.2d 652, 654 (Tex. App.—Texarkana 1986, pet. ref'd). If the

---

1. The jury charge read in part:

    Now, if you find from the evidence beyond a reasonable doubt that the defendant, FLAKE WOODY BROOKS, *did cause bodily injury to* RICHARD KARNS *by use of a deadly weapon,* as alleged, but you further find from the evidence, or you have reasonable doubt thereof, that viewed from the standpoint of the defendant at the time, from the words or conduct or both, of the said RICHARD KARNS or other person or persons with him, or any of them, *it reasonably appeared to the defendant that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of* said RICHARD KARNS or other persons with RICHARD KARNS, or any of them, and *that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself* against RICHARD KARNS' use or attempted use of unlawful deadly force or against the use or attempted use of unlawful deadly force by those person or persons with the said RICHARD KARNS, he caused bodily injury to RICHARD KARNS, as alleged in the indictment, and that a reasonable person in defendant's situation would not have retreated, then you will find the defendant not guilty. (Emphasis added.)

appellant was not harmed, he can show no prejudice and no error under *Strickland*, and thus the claim of ineffective assistance has no merit. *Boyd v. State*, 811 S.W.2d 105, 109 (Tex.Crim.App.), *cert. denied*, 502 U.S. 971, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991).

■ The jurors found Brooks guilty of aggravated assault by using a deadly weapon. They rejected Brooks' contention that he was justified in using deadly force for self-defense. The defect in the court's charge applies only to the assault charge. Had the jurors decided that Brooks used only non-deadly force, they would have found him guilty of simple assault, and then he would have a valid argument that the lack of proper instructions deprived him of his defense of justification. Even if Brooks' counsel had requested and received a self-defense instruction on the use of nondeadly force, the jurors would never have considered it because they determined that Brooks used deadly force. Thus, Brooks was not harmed.

Brooks also contends that there is insufficient evidence to support the jury's finding that he used a deadly weapon.

■ In reviewing the legal sufficiency of the evidence, we look at all of the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Nelson v. State*, 848 S.W.2d 126, 131 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 100, 126 L.Ed.2d 66 (1993). The jury must reconcile evidentiary conflicts and contradiction. Such conflicts will not lead to reversal if enough credible evidence supports the conviction. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim.App.1986).

■ In reviewing the factual sufficiency of the evidence, we look at all of the evidence, without the prism of "in the light most favor-

able to the prosecution," to determine whether the conviction is against the great weight of the evidence. We have the power and the duty to review factual sufficiency of the evidence. *See Lisai v. State*, 875 S.W.2d 35, 37 (Tex.App.—Texarkana 1994, pet. ref'd); *Stone v. State*, 823 S.W.2d 375, 377 (Tex. App.—Austin 1992, pet. ref'd, untimely filed).

■ A deadly weapon can be anything that in the manner of its use is capable of causing death or serious bodily injury. Tex.Penal Code Ann. § 1.07(a)(11)(B).[2] Serious bodily injury is bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. Tex.Penal Code Ann. § 1.07(a)(34).[3] Bodily injury means physical pain, illness or any impairment of physical condition. Tex.Penal Code Ann. § 1.07(a)(7).[4] Although a fist or hand is not a deadly weapon per se, it can become a deadly weapon if in the manner of use it is capable of causing death or serious bodily injury. *See Turner v. State*, 664 S.W.2d 86, 88–89 (Tex.Crim.App. [Panel Op.] 1983).

■ To support a deadly weapon finding, the State must show only that the accused's hands in the manner of their use were capable of causing death or serious bodily injury. *Clark v. State*, 886 S.W.2d 844, 845 (Tex. App.—Eastland 1994, no pet.). It need not show that the hands actually did cause serious bodily injury. *Id.* A showing that the accused used his hands in such a manner, even absent the intent to do so, will support a deadly weapon finding. *Id.*

■ Brooks is taller and heavier than Karns. Witnesses testified that Brooks knocked Karns unconscious with a single blow and then sat astride his chest and pounded his face and head with both fists. The medical records show that Karns had a subarachnoid hemorrhage, abrasions and swelling to the face and forehead, bruising,

---

**2.** *Amended by* Act of May 29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3588, current version found at Tex.Penal Code Ann. § 1.07(a)(17)(B) (Vernon 1994).

**3.** *Amended by* Act of May 29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3590, current

version found at Tex.Penal Code Ann. § 1.07(a)(46) (Vernon 1994).

**4.** *Amended by* Act of May 29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3588, current version found at Tex.Penal Code Ann. § 1.07(a)(8) (Vernon 1994).

and a traumatic contusion of the brain. Karns testified that he almost died and that he suffered from the effects of the beating two years later. The witness Frazier testified he told Brooks that he was killing Karns.

Brooks alleged mainly that Karns and Byrne were the aggressors and that he, Brooks, feared for his life. His testimony, however, did not controvert the fact that he used his fists as deadly weapons. In fact, he testified: "I pounded [Karns]. I hit him with everything I had, .... If I'd have been standing up, I really would have hurt him. I meant to hurt him."

▪ Brooks cites *Morales v. State*, 792 S.W.2d 789 (Tex.App.—Houston [1st Dist.] 1990, no pet.), and *Cooper v. State*, 773 S.W.2d 749 (Tex.App.—Corpus Christi 1989, no pet.), for the proposition that a finding that fists were used as deadly weapons requires expert medical testimony. While the State in those cases introduced medical testimony, the courts did not hold that medical testimony was required.[5]

▪ Brooks also argues that the State offered no proof he intended to use his hands as deadly weapons. Intent to use the hands as deadly weapons is not required. *Clark v. State*, 886 S.W.2d at 845.

We find that the evidence is legally and factually sufficient to support the verdict.

In his third point of error, Brooks complains because the trial court excluded evidence that Byrne was biased because his civil attorney had told him that he and Karns would have a better chance of recovering money from Brooks in a civil lawsuit if Brooks were convicted.

Byrne testified that he and Karns have a business partnership in lieu of marriage in which they share everything equally. Brooks proposed to offer testimony showing that Byrne, as Karns' partner, had a financial interest in the criminal trial's outcome because Byrne and Karns had talked to an attorney about filing a civil suit against Brooks. Brooks made an offer of proof to the court out of the jury's presence concern-

ing the gist of the proposed testimony. The court ruled that the evidence *was* admissible. As Brooks' attorney began questioning Byrne in the jury's presence about a possible lawsuit, the attorney asked him about something the civil attorney said. The prosecutor objected on hearsay grounds. The court sustained the objection, and the attorney continued questioning Byrne about the lawsuit. Presumably Brooks' attorney was preparing to ask Byrne whether the civil attorney had told him that it would be better to wait until Brooks was convicted before filing a civil lawsuit.

▪ Brooks' attorney made an offer of proof about the civil lawsuit, and the court ruled the evidence admissible. When the court excluded the civil attorney's comments as hearsay, however, Brooks' attorney failed to make another offer of proof to preserve his complaint. He therefore failed to preserve his complaint about the civil attorney's statement.

▪ If he had preserved his complaint, however, there was no harm. TEX.R.APP.P. 81(b)(2). In conducting a harm analysis where the trial court erroneously excluded evidence during cross-examination, we first assume that the damaging potential of the cross-examination was fully realized. *Love v. State*, 861 S.W.2d 899, 904 (Tex.Crim.App. 1993). Second, with that assumption in mind, we review the error in connection with the following factors: (1) the importance of the witness' testimony in the State's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.* Finally, in light of the first two prongs, we determine if the error was harmless beyond a reasonable doubt. *Id.*

Here, the only limitation the trial court placed on Brooks' cross-examination was to what the civil attorney told Byrne and Karns. The court allowed evidence that they were

---

5. Neither case specifically holds that expert testimony is not required to establish that fists can be deadly weapons. In comparison, no expert testimony is required to establish that a knife is a deadly weapon. *Jones v. State*, 843 S.W.2d 92, 96 (Tex.App.—Dallas 1992, pet. ref'd).

contemplating a lawsuit and that they would share the proceeds of any recovery. The court might have admitted much more of the testimony developed in the offer of proof. The court excluded only what the civil attorney said.

■■■ Even if Brooks had preserved the complaint, considering the extent of the cross-examination otherwise permitted and the overall strength of the State's case, we find that the exclusion was harmless beyond a reasonable doubt.[6]

The State in a cross-point contends that the trial court erred in not entering a deadly weapon finding because the jurors found Brooks guilty of aggravated assault through the use of a deadly weapon, his hands, as charged in the indictment.

The State filed the cross-point pursuant to TEX.CODE CRIM.PROC.ANN. art. 44.01(c) (Vernon Supp.1995), which entitles the State to appeal a ruling on a question of law if a convicted defendant appeals.

Brooks' indictment read, in part:

FLAKE WOODY BROOKS . . . did unlawfully then and there knowingly and intentionally cause bodily injury to another, namely, RICHARD KARNS, hereinafter called complainant, by striking said complainant with his hands, and the defendant did use a deadly weapon, to wit: his hands, . . . .

The jurors found Brooks guilty "as charged in the indictment."[7]

The court assessed punishment but specifically declined to enter an affirmative deadly weapon finding. Had the court entered an affirmative finding, it could not have granted

Brooks probation, now called community supervision. TEX.CODE CRIM.PROC.ANN. art. 42.12, § 3g(a)(2) (Vernon Supp.1995). The State argues that the court had a ministerial duty to enter the finding in the judgment because the jurors had made an affirmative finding.

When the fact finder makes an affirmative finding as to deadly weapon use, a trial court *shall* enter the finding in the court's judgment. *Id.*

■■■ The jury makes an affirmative finding of deadly weapon use when (1) use of a deadly weapon has been specifically alleged (using the nomenclature "deadly weapon") in the indictment and the jurors find the defendant guilty, "as charged in the indictment"; (2) the weapon allegedly used is a deadly weapon per se; or (3) the jurors have answered affirmatively a special issue. *Polk v. State,* 693 S.W.2d 391, 396 (Tex.Crim.App. 1985). Where the jury is trier of fact at the guilt-innocence phase and the jurors make an affirmative deadly weapon finding, the trial court has no discretion and must enter in its judgment the jury's finding. *See Ex parte Poe,* 751 S.W.2d 873, 876 (Tex.Crim.App. 1988); *Martinez v. State,* 874 S.W.2d 267, 268 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd); *State ex rel. Esparza v. Paxson,* 855 S.W.2d 170, 172 (Tex.App.—El Paso 1993, orig. proceeding).

■ The jury found Brooks guilty "as charged in the indictment," and the indictment alleged the use of a deadly weapon. Thus, the statute required that the trial court enter a deadly weapon finding.

---

**6.** The State argues the trial court did not err because the civil attorney's statements were, in fact, hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. TEX.R.CRIM.EVID. 801(d); *Baker v. State,* 887 S.W.2d 227, 229–30 (Tex.App.—Texarkana 1994, no pet.). A statement is not hearsay if its relevancy does not hinge on its truthfulness. *Bell v. State,* 877 S.W.2d 21, 24 (Tex.App.—Dallas 1994, pet. ref'd). Here, the civil attorney's out-of-court statements are relevant not because of their truthfulness. In fact, the statements—that Byrne and Karns would collect more money if Brooks were convicted—may have been false. They are relevant because

Byrne may have thought they were true and thus may have led to financially based bias.

**7.** The indictment contained another paragraph charging Brooks with aggravated assault in that he caused serious bodily injury and used a deadly weapon. TEX.PENAL CODE ANN. § 22.02(a)(1), (4), *amended by* Act of May 29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3619, current version found at TEX.PENAL CODE ANN. § 22.02(a)(1), (2) (Vernon 1994). The jury charge omitted any reference to serious bodily injury and alleged only the use of a deadly weapon and a lesser included assault offense.

Brooks relies on *Hooks v. State*, 860 S.W.2d 110, 113–14 (Tex.Crim.App.1993), and argues that the trial court has discretion after the fact finder makes an affirmative deadly weapon finding about whether to enter a deadly weapon finding in the judgment. In *Hooks v. State, supra*, however, the trial court was the fact finder during the trial's guilt-innocence phase. The court, after finding the defendant guilty of aggravated assault "as charged in the indictment," failed to specifically enter an affirmative deadly weapon finding. The Court of Criminal Appeals held that because the court had not entered the finding, the probationary sentence was not void. The *Martinez* case suggests that *Hooks* is limited to bench trials.[8] We agree. *See also Ex parte Empey*, 757 S.W.2d 771, 775 n. 7 (Tex.Crim.App.1988). Because the jury made an affirmative finding and the court was required to enter the finding, Brooks was not eligible for probation.

We reform the judgment of conviction to reflect the jury's affirmative finding that Brooks used a deadly weapon in the offense. Because the statute prohibits probation in that circumstance, the sentence is void. *Fullbright v. State*, 818 S.W.2d 808, 809–10 (Tex.Crim.App.1991). Because of the error in the punishment, the judgment is reversed, and the cause is remanded to the trial court for a new trial on punishment only. TEX. CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp.1995); *Fullbright v. State*, 818 S.W.2d at 811.

---

**8.** Although the *Martinez* court also says *Hooks* was a plea bargain agreement, *Hooks* was a bench trial with an evidentiary hearing on a not guilty plea. *Hooks v. State*, 838 S.W.2d 643, 644 (Tex.App.—Dallas 1992), *rev'd,* 860 S.W.2d 110 (Tex.Crim.App.1993).