# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00082-CR

**Gregory Dywayne Ward, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 50,938, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

A jury convicted appellant of aggravated robbery and aggravated assault. *See* Tex. Pen. Code Ann. '' 29.03(a)(2); 22.02(a)(2) (West 1994). The jury made an affirmative finding that the appellant used a deadly weapon in the course of committing the two crimes. *See* Tex. Crim. Code Proc. Ann. art. 42.12, 3g(a)(2) (West Supp. 2002); Tex. Gov=t Code Ann. ' 508.145(d) (West Supp. 2002). The trial court assessed punishment at forty years in prison and a $10,000 fine. Appellant brings three points of error challenging the factual sufficiency of the evidence to support his convictions. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

At approximately 6:30 p.m. on June 28, 1999, John Watts left the Sam=s Club in Temple, and walked to his vehicle, a Ford Explorer. Watts put the key in the ignition of his Explorer,

started the engine, and rolled down the electric windows in an effort to cool off the interior of the vehicle. After he loaded his groceries into the back of the Explorer, Watts returned his shopping cart to the Acart corral@located approximately ten to fifteen feet away from his vehicle. As Watts returned to the Explorer, he saw appellant get into it and back it out of the parking space. Watts then stood in front of the Explorer in an attempt to stop appellant. Appellant then Afloored it@and drove quickly out of the parking lot. Watts moved out of the way of the Explorer by putting his hands on the hood and jumping around to the side of the vehicle. Watts strained his hip as a result. The incident was estimated to have taken between five and twenty seconds. Appellant was arrested approximately two and a half weeks later on July 16, 1999.

At trial, appellant admitted stealing the Explorer but denied any intent to run over Watts or strike him with the vehicle. Instead, he asserted that he was simply trying to flee the scene as quickly as possible. Appellant stated further that he did not see Watts in front of the Explorer because the incident occurred so quickly. Watts asserted that appellant maintained eye contact with him throughout the incident and that he felt that if he had not moved out of the way, appellant would have run him over. A witness at the scene stated that he would have felt threatened in the situation, and that there was no indication that the driver of the Explorer had any intention of stopping to avoid hitting Watts. In addition, a police officer testified that a motor vehicle can be used as a deadly weapon.

Appellant brings three points of error on appeal: (1) the evidence is factually insufficient to support the finding of guilt of the offense of aggravated robbery with a deadly weapon, (2) the evidence is factually insufficient to support the finding of guilt of the offense of aggravated assault with a deadly weapon, and (3) the evidence is insufficient to show that the automobile was, in the manner and means of its use, a deadly weapon.

## DISCUSSION

### *The Factual Sufficiency Standard of Review*

In reviewing the factual sufficiency of the evidence, we begin with the presumption that the evidence supporting the judgment is legally sufficient. *Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996). The court reviews the evidence presented to the jury both tending to prove and disprove the elemental fact. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). The reviewing court views all the evidence in a neutral light, and sets aside the verdict Aonly if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.@ *Clewis*, 922 S.W.2d at 129; *see also Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

The appellate court may disagree with the fact finder=s determination, but its review must employ appropriate deference to prevent substituting its judgment for that of the fact finder. *Johnson*, 23 S.W.3d at 7. Further, the examination should not substantially intrude on the fact finder=s role as the sole judge of the weight and credibility given to witness testimony. *Id.* The degree of deference a reviewing court provides must be proportionate with the facts it can accurately glean from the trial record. *Id.* at 8. Unless the record clearly demonstrates that a different result is

appropriate, an appellate court must defer to the jury=s determination concerning what weight to give contradictory testimonial evidence because resolution frequently hinges on an evaluation of credibility and demeanor, and the jurors were in attendance when the testimony was delivered. *Id.* Moreover, it is not enough to support a finding of factual insufficiency that an equally plausible alternative to the jury=s determination exists. *Goodman v. State*, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001). The existence of some evidence contrary to the outcome is acceptable. It is only when the conviction ignores the great weight and preponderance of contrary evidence that the verdict should be set aside. *Id.*

### *The Intent Element*

A party commits the offense of robbery if, in the course of committing theft and with the intent to obtain or maintain control of property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See* Tex. Pen. Code Ann. ' 29.02(a)(2) (West 1994). If a person uses or exhibits a deadly weapon during the commission of a robbery, the offense becomes an aggravated robbery. *Id.* ' 29.03(a)(2).

Assault occurs when a person intentionally or knowingly threatens another with imminent bodily injury. *See* Tex. Pen. Code Ann. ' 22.01(a)(2) (West Supp. 2002). The offense becomes an aggravated assault if it is committed using a deadly weapon. *Id.* ' 22.02(a)(2) (West 1994).

The question raised by appellant in his first two issues is whether the evidence offered by the State was factually sufficient to prove beyond a reasonable doubt that he intentionally or

knowingly threatened or placed Watts in fear of imminent bodily injury or death. The resolution of this issue hinged on the credibility of the testimony of the witnesses at trial, including the appellant who testified in his own behalf. Appellant testified that he did not intend to threaten Watts, while Watts and an eyewitness testified that they believed appellant knew of Watts=s presence in the parking lot and intended to accelerate in his direction. On direct and redirect examination, Watts testified as follows:

Q: Did you happen to see where [appellant] was looking as you were standing in front of the vehicle, pointing your finger at him?

A: He was watching me closely. As he got in the vehicle his eyes were on me. . . . And he got in and he never took his eyes off me.

Q: How about when you were standing in front of the vehicle?

A: He looked me right in the eye.

. . .

Q: Now as you stood in front of your vehicle and pointed the finger at this individual making eye contact with him, what happened next?

A: He pulled her down into drive and stood on it.

Q: What do you mean by Astood on it@?

A: He floored it.

. . .

Q: Do you believe this individual intended to hit you with the vehicle?

A: Yes, I think he would have run over me if I hadn=t been able to get out of the way.

An eyewitness, Carlos Brooks, testified that he would have felt threatened had he been in Watts=s position. When asked how fast the appellant drove the Explorer towards Watts, Brooks replied that it was fast enough that he would have gotten out of the way. The appellant admitted that he jumped into Watts=s vehicle with the intent to steal it, but denied any intent to use the Explorer as a weapon or to harm Watts in any way. He asserted that he was not the type of man who would harm another individual intentionally, and said he was only trying to flee the scene as quickly as possible. However, he admitted he would have felt threatened under the same circumstances.

Threats may be communicated by action or conduct as well as words. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984). A neutral review of the evidence reveals that the jury could reasonably find that appellant intentionally or knowingly threatened Watts. Appellant admitted that he floored the vehicle, that he saw Watts near the car as he exited the parking lot, and that he would have felt threatened under the same circumstances. This coupled with testimony by the victim and the eyewitness that appellant suddenly accelerated toward Watts forcing him to jump out of the way and that appellant maintained eye contact with Watts throughout the incident was sufficient to outweigh the evidence to the contrary, which consisted solely of appellant=s testimony that he did not intend to threaten Watts. At best, appellant offers only an equally plausible alternative version of the facts that the jury chose not to believe. Therefore, the verdict was not so contrary to the overwhelming evidence as to be unjust. We overrule appellant=s first and second points of error.

*Motor Vehicle as Deadly Weapon*

**6**

In his third point of error, appellant contends that the evidence adduced at trial was factually insufficient to support the jury=s affirmative finding that he used the Explorer as a deadly weapon.[1] Appellant claims he used the Explorer simply to effect his escape and that he had no specific intent to threaten, hurt, or kill Watts with the Explorer.

A deadly weapon is Aanything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury.@ Tex. Pen. Code Ann. ' 1.07(a)(17)(B) (West 1994) (emphasis added).  An instrument that is not a deadly weapon *per se* may qualify as a deadly weapon by (1) the manner of its use or intended use, (2) the instrument=s size and shape, and (3) the instrument=s capacity to produce death or serious bodily injury.  *Garza v. State*, 695 S.W.2d 726, 728 (Tex. App.CDallas 1985), *aff=d*, 725 S.W.2d 256 (Tex. Crim. App. 1987).  To establish use of a deadly weapon, the State is not

---

[1]    ADeadly weapon@ means:

(A)    a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B)    anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Tex. Pen. Code Ann. ' 1.07(a)(17) (West 1994).

required to prove the weapon used *actually* caused death or serious bodily injury. *See Brooks v. State*, 900 S.W.2d 468, 472 (Tex. App.CTexarkana 1995, no pet.). Rather, the State must show the weapon was *capable* of causing death or serious bodily injury. *Id.* at 472. At trial, the police officer who arrested appellant, testified that in her experience an automobile could be used as a deadly weapon; thus, the State produced evidence from which a jury could reasonably infer that the Explorer was capable of causing death or serious bodily injury. There was also ample evidence from which the jury could infer that the Explorer, in the manner of its use, was capable of causing death or serious bodily injury. Appellant saw Watts near the vehicle as he exited the parking lot and accelerated forcing Watts to jump out of the way.

The issue of whether a jury must find that a defendant intended to use the motor vehicle as a deadly weapon was addressed by the court of criminal appeals in *Walker v. State*, 897 S.W.2d 812 (Tex. Crim. App. 1995), in which the court construed Adeadly weapon@ as it appears in  article 42.12, section 3g(a)(2) of the code of criminal procedure.[2] In that case, the defendant argued against the jury=s affirmative finding that he used his vehicle as a deadly weapon because he was charged with involuntary manslaughter

---

[2]    Article 42.12, section 3g(a)(2) provides:

The provisions of Section 3 of this article do not apply:

\* \* \*

(2)    to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited.

Tex. Code Crim. Proc. Ann. art. 42.12, ' 3g(a)(2) (West 2002).

**8**

resulting from his operation of a motor vehicle while intoxicated, thus, there was no evidence he operated his car with intent to cause the decedent=s death.  In addressing appellant=s claim, the court of criminal appeals relied on *Patterson v. State*, 769 S.W.2d 938, 940-941 (Tex. Crim App. 1989), concerning the meaning of AUse@:

> AUse@ as a verb, may mean a number of things.  For example, Ause@ is defined as >to put into action or service: have recourse or enjoyment of: employ . . . to carry out a purpose or action by means of: make instrumental to an end or process: apply to advantage: turn to account: utilize=. . . .  In explicating the word the dictionary provides the following synonym [sic] >employ, utilize, apply, avail: use is general and indicates putting to service of a thing, usu. for an intended or fit purpose . . . .=@

*Id.*  Based on this analysis, the court reasoned that when there is no clear intent to harm or kill, the meaning of Ause@ is open to the broadest possible interpretation.  *Walker*, 897 S.W.2d at 814.  For example, use of a deadly weapon during the commission of a felony offense refers not only to the actual wielding of a firearm but also extends to any employment of a deadly weapon, including mere possession, if such possession facilitates the commission of the associated felony.  *Patterson*, 769 S.W.2d at 941.  Therefore, the *Walker* court held that no intent to use the automobile as a deadly weapon was required; rather, Aan object may be used as a deadly weapon where the >manner of its use . . . is capable of causing death or serious bodily injury.=@  *Walker*, 897 S.W.2d at 814 (quoting definition of Adeadly weapon@ in section 1.07 of the penal code); *see also Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995).  This Court expressed the same view in *Roberts v. State*, 766 S.W.2d 578, 579 (Tex. App.CAustin 1989, no pet.).  In that case, we held that the reckless operation of a truck, with an awareness of, but conscious disregard for, a substantial and unjustifiable risk that injuries to another would result, was enough to find the truck was used as a deadly

**9**

weapon. *Id.* Thus, we hold it was not necessary for the jury to find that the defendant intended to use the Explorer as a deadly weapon.[3]

The jury=s determination that the Explorer was, in the manner of its use, a deadly weapon is not against the great weight of the evidence. Accordingly, we hold that the evidence was factually sufficient to support appellant=s conviction. We overrule appellant=s third point of error.

## CONCLUSION

Having overruled all appellant=s points of error, we affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: July 26, 2002

---

[3] We note that in an earlier case involving possession of a prohibited weapon, the court of criminal appeals held that in order for an object to qualify as a deadly weapon for affirmative finding purposes, the weapon must be utilized to achieve an intended result, namely, the commission of a felony offense. *Narron v. State*, 835 S.W.2d 642, 644 (Tex. Crim. App. 1992). There was ample evidence in this case that appellant used the Explorer to commit a felony offense.

Do Not Publish