TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00082-CR






Gregory Dywayne Ward, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT

NO. 50,938, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING






 A jury convicted appellant of aggravated robbery and aggravated assault. See Tex.
Pen. Code Ann. §§ 29.03(a)(2); 22.02(a)(2) (West 1994). The jury made an affirmative finding that
the appellant used a deadly weapon in the course of committing the two crimes. See Tex. Crim. 
Code Proc. Ann. art. 42.12, 3g(a)(2) (West Supp. 2002); Tex. Gov't Code Ann. § 508.145(d) (West
Supp. 2002). The trial court assessed punishment at forty years in prison and a $10,000 fine. 
Appellant brings three points of error challenging the factual sufficiency of the evidence to support
his convictions. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND

 At approximately 6:30 p.m. on June 28, 1999, John Watts left the Sam's Club in
Temple, and walked to his vehicle, a Ford Explorer. Watts put the key in the ignition of his
Explorer, started the engine, and rolled down the electric windows in an effort to cool off the interior
of the vehicle. After he loaded his groceries into the back of the Explorer, Watts returned his
shopping cart to the "cart corral" located approximately ten to fifteen feet away from his vehicle. 
As Watts returned to the Explorer, he saw appellant get into it and back it out of the parking space. 
Watts then stood in front of the Explorer in an attempt to stop appellant. Appellant then "floored
it" and drove quickly out of the parking lot. Watts moved out of the way of the Explorer by putting
his hands on the hood and jumping around to the side of the vehicle. Watts strained his hip as a
result. The incident was estimated to have taken between five and twenty seconds. Appellant was
arrested approximately two and a half weeks later on July 16, 1999.

 At trial, appellant admitted stealing the Explorer but denied any intent to run over
Watts or strike him with the vehicle. Instead, he asserted that he was simply trying to flee the scene
as quickly as possible. Appellant stated further that he did not see Watts in front of the Explorer
because the incident occurred so quickly. Watts asserted that appellant maintained eye contact with
him throughout the incident and that he felt that if he had not moved out of the way, appellant would
have run him over. A witness at the scene stated that he would have felt threatened in the situation,
and that there was no indication that the driver of the Explorer had any intention of stopping to avoid
hitting Watts. In addition, a police officer testified that a motor vehicle can be used as a deadly
weapon.

 Appellant brings three points of error on appeal: (1) the evidence is factually
insufficient to support the finding of guilt of the offense of aggravated robbery with a deadly weapon,
(2) the evidence is factually insufficient to support the finding of guilt of the offense of aggravated
assault with a deadly weapon, and (3) the evidence is insufficient to show that the automobile was,
in the manner and means of its use, a deadly weapon.


DISCUSSION

The Factual Sufficiency Standard of Review

 In reviewing the factual sufficiency of the evidence, we begin with the presumption
that the evidence supporting the judgment is legally sufficient. Clewis v. State, 922 S.W.2d 126,
129-30 (Tex. Crim. App. 1996). The court reviews the evidence presented to the jury both tending
to prove and disprove the elemental fact. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App.
1996). The reviewing court views all the evidence in a neutral light, and sets aside the verdict "only
if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." 
Clewis, 922 S.W.2d at 129; see also Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

 The appellate court may disagree with the fact finder's determination, but its review
must employ appropriate deference to prevent substituting its judgment for that of the fact finder. 
Johnson, 23 S.W.3d at 7. Further, the examination should not substantially intrude on the fact
finder's role as the sole judge of the weight and credibility given to witness testimony. Id. The
degree of deference a reviewing court provides must be proportionate with the facts it can accurately
glean from the trial record. Id. at 8. Unless the record clearly demonstrates that a different result
is appropriate, an appellate court must defer to the jury's determination concerning what weight to
give contradictory testimonial evidence because resolution frequently hinges on an evaluation of
credibility and demeanor, and the jurors were in attendance when the testimony was delivered. Id. 
Moreover, it is not enough to support a finding of factual insufficiency that an equally plausible
alternative to the jury's determination exists. Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim.
App. 2001). The existence of some evidence contrary to the outcome is acceptable. It is only when
the conviction ignores the great weight and preponderance of contrary evidence that the verdict
should be set aside. Id.


The Intent Element

 A party commits the offense of robbery if, in the course of committing theft and with
the intent to obtain or maintain control of property, he intentionally or knowingly threatens or places
another in fear of imminent bodily injury or death. See Tex. Pen. Code Ann. § 29.02(a)(2) (West
1994). If a person uses or exhibits a deadly weapon during the commission of a robbery, the offense
becomes an aggravated robbery. Id. § 29.03(a)(2). 

 Assault occurs when a person intentionally or knowingly threatens another with
imminent bodily injury. See Tex. Pen. Code Ann. § 22.01(a)(2) (West Supp. 2002). The offense
becomes an aggravated assault if it is committed using a deadly weapon. Id. § 22.02(a)(2) (West
1994).

 The question raised by appellant in his first two issues is whether the evidence offered
by the State was factually sufficient to prove beyond a reasonable doubt that he intentionally or
knowingly threatened or placed Watts in fear of imminent bodily injury or death. The resolution of
this issue hinged on the credibility of the testimony of the witnesses at trial, including the appellant
who testified in his own behalf. Appellant testified that he did not intend to threaten Watts, while
Watts and an eyewitness testified that they believed appellant knew of Watts's presence in the
parking lot and intended to accelerate in his direction. On direct and redirect examination, Watts
testified as follows:


Q: Did you happen to see where [appellant] was looking as you were standing in
front of the vehicle, pointing your finger at him?


A: He was watching me closely. As he got in the vehicle his eyes were on me. . . .
And he got in and he never took his eyes off me.


Q: How about when you were standing in front of the vehicle?


A: He looked me right in the eye.


. . .


Q: Now as you stood in front of your vehicle and pointed the finger at this
individual making eye contact with him, what happened next?


A: He pulled her down into drive and stood on it.


Q: What do you mean by "stood on it"?


A: He floored it.


. . .


Q: Do you believe this individual intended to hit you with the vehicle?


A: Yes, I think he would have run over me if I hadn't been able to get out of the
way.



 An eyewitness, Carlos Brooks, testified that he would have felt threatened had he
been in Watts's position. When asked how fast the appellant drove the Explorer towards Watts,
Brooks replied that it was fast enough that he would have gotten out of the way. The appellant
admitted that he jumped into Watts's vehicle with the intent to steal it, but denied any intent to use
the Explorer as a weapon or to harm Watts in any way. He asserted that he was not the type of man
who would harm another individual intentionally, and said he was only trying to flee the scene as
quickly as possible. However, he admitted he would have felt threatened under the same
circumstances.

 Threats may be communicated by action or conduct as well as words. McGowan v.
State, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984). A neutral review of the evidence reveals that
the jury could reasonably find that appellant intentionally or knowingly threatened Watts. Appellant
admitted that he floored the vehicle, that he saw Watts near the car as he exited the parking lot, and
that he would have felt threatened under the same circumstances. This coupled with testimony by
the victim and the eyewitness that appellant suddenly accelerated toward Watts forcing him to jump
out of the way and that appellant maintained eye contact with Watts throughout the incident was
sufficient to outweigh the evidence to the contrary, which consisted solely of appellant's testimony
that he did not intend to threaten Watts. At best, appellant offers only an equally plausible
alternative version of the facts that the jury chose not to believe. Therefore, the verdict was not so
contrary to the overwhelming evidence as to be unjust. We overrule appellant's first and second
points of error.


Motor Vehicle as Deadly Weapon

 In his third point of error, appellant contends that the evidence adduced at trial was
factually insufficient to support the jury's affirmative finding that he used the Explorer as a deadly
weapon. (1) Appellant claims he used the Explorer simply to effect his escape and that he had no
specific intent to threaten, hurt, or kill Watts with the Explorer. 

 A deadly weapon is "anything that in the manner of its use or intended use is capable
of causing death or serious bodily injury." Tex. Pen. Code Ann. § 1.07(a)(17)(B) (West 1994)
(emphasis added). An instrument that is not a deadly weapon per se may qualify as a deadly weapon
by (1) the manner of its use or intended use, (2) the instrument's size and shape, and (3) the
instrument's capacity to produce death or serious bodily injury. Garza v. State, 695 S.W.2d 726, 728
(Tex. App.--Dallas 1985), aff'd, 725 S.W.2d 256 (Tex. Crim. App. 1987). To establish use of a
deadly weapon, the State is not required to prove the weapon used actually caused death or serious
bodily injury. See Brooks v. State, 900 S.W.2d 468, 472 (Tex. App.--Texarkana 1995, no pet.). 
Rather, the State must show the weapon was capable of causing death or serious bodily injury. Id.
at 472. At trial, the police officer who arrested appellant, testified that in her experience an
automobile could be used as a deadly weapon; thus, the State produced evidence from which a jury
could reasonably infer that the Explorer was capable of causing death or serious bodily injury. There
was also ample evidence from which the jury could infer that the Explorer, in the manner of its use,
was capable of causing death or serious bodily injury. Appellant saw Watts near the vehicle as he
exited the parking lot and accelerated forcing Watts to jump out of the way.

 The issue of whether a jury must find that a defendant intended to use the motor
vehicle as a deadly weapon was addressed by the court of criminal appeals in Walker v. State, 897
S.W.2d 812 (Tex. Crim. App. 1995), in which the court construed "deadly weapon" as it appears in 
article 42.12, section 3g(a)(2) of the code of criminal procedure. (2) In that case, the defendant argued
against the jury's affirmative finding that he used his vehicle as a deadly weapon because he was
charged with involuntary manslaughter resulting from his operation of a motor vehicle while
intoxicated, thus, there was no evidence he operated his car with intent to cause the decedent's death. 
In addressing appellant's claim, the court of criminal appeals relied on Patterson v. State, 769
S.W.2d 938, 940-941 (Tex. Crim App. 1989), concerning the meaning of "use":


"Use" as a verb, may mean a number of things. For example, "use" is defined as 'to
put into action or service: have recourse or enjoyment of: employ . . . to carry out a
purpose or action by means of: make instrumental to an end or process: apply to
advantage: turn to account: utilize'. . . . In explicating the word the dictionary
provides the following synonym [sic] 'employ, utilize, apply, avail: use is general and
indicates putting to service of a thing, usu. for an intended or fit purpose . . . .'"



Id. Based on this analysis, the court reasoned that when there is no clear intent to harm or kill, the
meaning of "use" is open to the broadest possible interpretation. Walker, 897 S.W.2d at 814. For
example, use of a deadly weapon during the commission of a felony offense refers not only to the
actual wielding of a firearm but also extends to any employment of a deadly weapon, including mere
possession, if such possession facilitates the commission of the associated felony. Patterson, 769
S.W.2d at 941. Therefore, the Walker court held that no intent to use the automobile as a deadly
weapon was required; rather, "an object may be used as a deadly weapon where the 'manner of its
use . . . is capable of causing death or serious bodily injury.'" Walker, 897 S.W.2d at 814 (quoting
definition of "deadly weapon" in section 1.07 of the penal code); see also Tyra v. State, 897 S.W.2d
796, 798 (Tex. Crim. App. 1995). This Court expressed the same view in Roberts v. State, 766
S.W.2d 578, 579 (Tex. App.--Austin 1989, no pet.). In that case, we held that the reckless operation
of a truck, with an awareness of, but conscious disregard for, a substantial and unjustifiable risk that
injuries to another would result, was enough to find the truck was used as a deadly weapon. Id. 
Thus, we hold it was not necessary for the jury to find that the defendant intended to use the Explorer
as a deadly weapon. (3)

 The jury's determination that the Explorer was, in the manner of its use, a deadly
weapon is not against the great weight of the evidence. Accordingly, we hold that the evidence was
factually sufficient to support appellant's conviction. We overrule appellant's third point of error.


CONCLUSION

 Having overruled all appellant's points of error, we affirm the judgment of the
trial court. 



 __________________________________________

 David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: July 26, 2002

Do Not Publish

1. "Deadly weapon" means:


(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting
death or serious bodily injury; or


(B) anything that in the manner of its use or intended use is capable of causing death or serious
bodily injury.


Tex. Pen. Code Ann. § 1.07(a)(17) (West 1994).
2. Article 42.12, section 3g(a)(2) provides:


The provisions of Section 3 of this article do not apply:


* * *



(2) to a defendant when it is shown that a deadly weapon as defined in Section
1.07, Penal Code, was used or exhibited during the commission of a felony
offense or during immediate flight therefrom, and that the defendant used
or exhibited the deadly weapon or was a party to the offense and knew that
a deadly weapon would be used or exhibited.


Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West 2002).
3. We note that in an earlier case involving possession of a prohibited weapon, the court of
criminal appeals held that in order for an object to qualify as a deadly weapon for affirmative finding
purposes, the weapon must be utilized to achieve an intended result, namely, the commission of a
felony offense. Narron v. State, 835 S.W.2d 642, 644 (Tex. Crim. App. 1992). There was ample
evidence in this case that appellant used the Explorer to commit a felony offense.