Opinion issued November 26, 2003



     












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00984-CR




RODOLFO VASQUEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 902566




MEMORANDUM OPINION
          A jury convicted appellant, Rodolfo Vasquez, of aggravated assault and
assessed punishment at 10 years’ confinement. In three points of error, appellant
contends that (1) there was legally insufficient evidence to prove that his hand was
a deadly weapon; (2) there was factually insufficient evidence to prove that his hand
was a deadly weapon; and (3) the trial court erred by allowing the complaining
witness to testify about the diagnosis given to her by a treating physician. We affirm.
BACKGROUND
          Karen Madern began dating appellant, a Houston police officer, in 1997, and
later they were engaged to be married. Madern broke off their engagement. In April
2001, Madern was studying to become a registered nurse, and the two had not seen
each other for six months. When Madern told appellant that she was dating someone
else, he became very upset. Nevertheless, Madern decided to go out to dinner with
appellant on the evening of April 16. 
          The two met in a restaurant parking lot, and then appellant drove them to a
restaurant in his truck. The dinner conversation went well, and appellant then drove
with Madern back to his apartment.
          While the couple was in appellant’s bedroom, they began to rekindle their
romance. Appellant was standing approximately two feet away, and Madern was
lying on the bed, when they started talking about Madern’s other relationships. 
Appellant asked Madern whether she had had sex with anyone else while they were
separated. He then blamed Madern’s friend for setting her up with another man. 
Madern defended her friend by responding that she made her own decisions. 
          Appellant then straddled Madern’s stomach and began punching her on the left
side of her face with his closed, right fist. He held her neck with the other hand and
punched her five to seven times. Madern could see blood on his hands. Madern was
five feet, four inches tall and weighed 125 pounds; appellant was six feet one, inch
tall and weighed 220 pounds. 
          Madern called 9-1-1, but appellant took the telephone away from her and called
Reynaldo Chapa, one of his friends from the police force. After waiting about half
an hour, Chapa drove appellant and Madern to the hospital. While they were in the
truck, appellant told Madern that he would lose his job if the police department found
out the truth about the assault, so he asked her to lie and to say that the injuries
occurred during a robbery. Once they reached the hospital, Chapa took Madern
inside. Anthony McConnell, of the Harris County Sheriff’s Office, tried to talk to
Madern at the hospital, but her jaw would not move, which made McConnell believe
that her jaw had been broken. Chapa and Madern told McConnell that Madern had
been robbed and beaten at a pay phone, but McConnell did not believe their story.
          McConnell called another deputy, Kevin Cote, to interview Madern at the
hospital. Cote, who had been a deputy for 11 years, testified that Madern’s beating
was the worst that he had ever seen. When Cote confronted Madern about some of
the inconsistencies in her story, she started crying and stated that she did not want to
“get him in trouble.” Madern then told Cote that “Rudy did it” and gave Cote
appellant’s full name and address. Madern explained to McConnell that she had lied
because appellant was “one of y’all.”
          Madern testified about the extent of her injuries. She said that she had blood
all over her face and that her face was badly swollen. When she looked in the mirror,
she did not recognize herself. She also testified that the left side of her head, her left
eye, her left ear, and her nose were painful and that she was bleeding from her neck. 
Madern stated that, as a result of the beating, she had a scar behind her ear.
          Madern also testified that she suffered a septum deviation and a lateral
hematoma and that her left eye has drooped since the assault. She also stated that she
lost her hearing and the vision in her left eye for “a couple of months.” She stated
that she was still having pain where the hematoma was located; she has nerve damage
on her cheek; and there was possibly a fracture there. Lastly, Madern stated her
cheek bone was “dented” when she smiled. 
          The only other witness who offered testimony regarding Madern’s injuries was
Renee Madden, a nurse practictioner


 who saw Madern in the hospital. She testified
that Madern was not treated immediately, but, instead, was placed in a family room
for a period of time prior to her examination. Madern was later placed in minor care. 
 
          With regard to Madern’s injuries, Madden testified that it appeared that Madern
had been “savagely” beaten and there was “grotesque swelling and hematoma and
contusions and abrasions.” She also stated that there were “a lot of contusions and
bleeding on the inner buckle of her inner cheek.” Madden also stated that she was
concerned that Madern might have a broken nose and broken facial bones and that
her airway might be obstructed, but she did not know whether there was significant
swelling that would cause such problems. Madden also testified that it is possible one
could sustain permanent head injuries or die from the kind of injuries sustained by
Madern.
ANALYSIS
          Appellant was charged with aggravated assault, as defined by the Texas Penal
Code, which provides:
(a) a person commits an offense if the person commits assault . . . and the
person:
 
(2) uses or exhibits a deadly weapon during the commission of the
assault.

Tex. Pen. Code Ann. § 22.02 (Vernon 2003). 

          A deadly weapon is defined as “anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury.” Id. § 1.07(17)(B). 
Serious bodily injury is defined as “bodily injury that creates a substantial risk of
death or that causes death, serious permanent disfigurement, or protracted loss of any
bodily member or organ.” Id. § 1.07(46) The indictment alleged that appellant’s
hands were a deadly weapon. 
A. Sufficiency of the Evidence
          In his first two points of error, appellant contends the evidence was legally and
factually insufficient to show that his hands were a deadly weapon. In evaluating
legal and factual sufficiency, we follow the usual standards of review. See Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (legal sufficiency); King v.
State, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000) (factual sufficiency).
          1. Legal Sufficiency
          Appellant argues that there is no evidence to show that his hands were a deadly
weapon. Appellant argues that “[s]imply because the person is struck with a hand in
the face does not make a hand a deadly weapon.” We agree that hands are not deadly
weapons per se, but they can become deadly weapons in the manner of their use,
depending upon the evidence. Turner v. State, 664 S.W.2d 86, 89-90 (Tex. Crim.
App. 1983); Judd v. State, 923 S.W.2d 135, 140 (Tex. App.—Fort Worth 1996, pet.
ref’d); Cooper v. State, 773 S.W.2d 749, 750 (Tex. App.—Corpus Christi 1989, no
pet.). When the State alleges the use of a deadly weapon that is not deadly per se, the
State must prove beyond a reasonable doubt that the weapon alleged was used in a
manner capable of causing death or serious bodily injury. See Hill v. State, 913
S.W.2d 581, 584 (Tex. Crim. App. 1996); Hester v. State, 909 S.W.2d 174, 179 (Tex.
App.—Dallas 1995, no pet.). However, the State need not show that the hands
actually caused serious bodily injury, so long as it shows that the hands, in the manner
used, were capable of causing serious bodily injury. See Brooks v. State, 900 S.W.2d
468, 472 (Tex. App.—Texarkana 1995, no pet.); Clark v. State, 886 S.W.2d 844, 845
(Tex. App.—Eastland 1994, no pet.); Gillum v. State, 888 S.W.2d 281, 288 (Tex.
App.—El Paso 1994, pet. ref’d).
          In this case, Deputy McConnell stated that Madern’s injuries were serious and
could have caused her death. In addition, the jury saw photographs of the victim’s
face taken shortly after the incident, which show what Renee Madden, a nurse
practitioner, described as “grotesque swelling.” Madern testified that, as a result of
the beating she received at appellant’s hands, she lost the hearing in one ear and the
vision in her left eye for “a couple of months.” There was also evidence that Madern
had suffered a deviated septum and nerve damage, and that her left cheek was
permanently “dented.”
          From this evidence, the jury could have rationally concluded that appellant’s
hands, in the manner used, were capable of inflicting serious bodily injury to Madern. 
See Morales v. State, 792 S.W.2d 789, 790-91 (Tex. App.—Houston [1st Dist.] 1990,
no pet.) (holding evidence sufficient to support deadly-weapon finding when
evidence showed that defendant used his hands to suffocate victim); see also
Jefferson v. State, 974 S.W.2d 887, 891-92 (Tex. App.—Austin 1998, no pet.)
(holding evidence factually sufficient to show hands were deadly weapon when
victim suffered broken nose and three lacerations above eye, requiring 14 stitches).
          We hold that the evidence is legally sufficient. Accordingly, we overrule point
of error one.
          2. Factual Sufficiency
          In support of his claim that the evidence is factually insufficient to show that
his hands were a deadly weapon, appellant argues that “other than evidence regarding
the complainant’s injuries, there was no evidence to substantiate the allegation that
appellant’s hand was, in fact, a deadly weapon.” However, no other evidence is
necessary in this case because the nature and extent of Madern’s injuries show that
appellant’s hands, in the manner used, were capable of inflicting serious bodily
injury.
          The jury’s finding that appellant’s hands were a deadly weapon is not against
the great weight and preponderance of the evidence. Accordingly, we overrule point
of error two.
B. Admission of Hearsay
          In point of error three, appellant contends that the trial court erred by
permitting the victim, Madern, to testify about the diagnosis given her by her treating
physicians. Specifically, appellant contends that the evidence was hearsay. We
review the trial court’s ruling regarding the admission or exclusion of evidence under
an abuse-of-discretion standard. Weatherred v. State, 15 S.W.3d 540, 542 (Tex.
Crim. App. 2000). During Madern’s testimony, the following exchange took place:
[Prosecutor]: While the Jury is looking over the pictures, can you tell
us what kind of doctors that you’ve been to as a result of these injuries?
 
[Madern]: Been to ear, nose and throat specialists.
 
[Prosecutor]: Can you tell us any kind of diagnosis that you had or loss
of anything you had or injuries that you had as far as your ear, nose and
throat go?
 
[Defense Counsel]: I’m going to object to expert diagnosis. Of course
she knows her own condition. As to diagnosis, I object to it. (Emphasis
added).
 
[The Court]: That you understand. I overrule the objection, allow you
to answer.
 
[Prosecutor]: Can you tell this Jury what kind of problems you had with
your nose? How has your nose been affected by this assault?
 
[Madern]: I have a septum deviation and I had a left lateral hematoma.
          Appellant contends that the evidence should have been excluded because it was
hearsay. See Tex. R. Evid. 801(d). As such, appellant argues that he was not able
to cross-examine the declarant, i.e., Madern’s treating physicians.
          However, arguments on appeal must comport with objections made at trial. 
Dixon v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Here, appellant
objected to Madern’s testifying about any “expert diagnosis.” This objection does not
comport with the hearsay objection raised on appeal. Accordingly, appellant’s
hearsay complaint is waived. See id.
          Appellant also argues that his objection was improperly overruled because
“there was no foundation laid to show the complaining witness was qualified to give
expert testimony.” Even if we were to decide that this complaint comported with the
trial objection, we would nonetheless overrule the point of error. Appellant provides
no analysis or authority to support this complaint, but instead briefs only his hearsay
argument. As such, even if error was preserved on this ground, the ground is
inadequately briefed on appeal. Therefore, this complaint, too, is waived. See
Lockett v. State, 16 S.W.3d 504, 505 n.2 (Tex. App.—Houston [1st Dist.] 2000, pet.
ref’d); see also Tex. R. App. P. 38.1(h).
          Accordingly, we overrule issue three.
CONCLUSION
          We affirm the judgment.
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Alcala.

Do not publish. Tex. R. App. P. 47(b)(2).